1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 20, 2018

SEAN F. McAVOY, CLERK

3

# UNITED STATES DISTRICT COURT

4

# EASTERN DISTRICT OF WASHINGTON

5
6
7
8
9
10

| | |
|---|---|
| TINA G., <br><br>            Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>            Defendant. | No. 2:17-cv-00433-MKD <br><br> REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 14, 21 |

11      Before the Court on report and recommendation are the parties' cross-

12  motions for summary judgment. ECF Nos. 14, 21. The Court, having reviewed

13  the administrative record and the parties' briefing, is fully informed. For the

14  reasons discussed below, **IT IS RECOMMENDED** Plaintiff's Motion, ECF No.

15  14, be granted and Defendant's Motion, ECF No. 21, be denied.

16                          **JURISDICTION**

17      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g),

18  1383(c)(3).

19                      **STANDARD OF REVIEW**

20

REPORT AND RECOMMENDATION - 1

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's

REPORT AND RECOMMENDATION - 2

decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

REPORT AND RECOMMENDATION - 3

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

REPORT AND RECOMMENDATION - 4

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

REPORT AND RECOMMENDATION - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

Plaintiff applied for disability insurance benefits and social security income benefits on May 19, 2014, Tr. 303-16, alleging an amended disability onset date of December 12, 2012.[1] Tr. 47. Benefits were denied initially, Tr. 159-60, and upon reconsideration. Tr. 197-98. Plaintiff appeared for hearings before an administrative law judge (ALJ) on April 20, 2016 and June 21, 2016. Tr. 45-72, 73-87. On August 19, 2016, the ALJ denied Plaintiff's claims. Tr. 20-44.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 12, 2012, the day after the prior ALJ decision of non-disability. Tr. 26. At step two, the ALJ found Plaintiff has the following severe impairments: lumbosacral degenerative disc disease and osteoarthritis; borderline

---

[1] Plaintiff amended her alleged onset date because she was previously found not disabled in a decision dated December 11, 2012. Tr. 88-112.

REPORT AND RECOMMENDATION - 6

intellectual functioning; depression; anxiety; and personality disorder.  Tr. 26.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 26.  The ALJ then concluded that Plaintiff has the RFC to perform medium work with the following additional limitations:

> [Plaintiff] can lift and carry up to 20 pounds occasionally (up to 1/3 of the workday) and up to 10 pounds frequently (up to 2/3 of the workday).  She can sit for six hours and she can stand or walk for six hours in an eight-hour workday.  She can perform unlimited bilateral upper extremity pushing or pulling, including use of foot controls, other than as stated for lift and carry.  [Plaintiff] can perform unlimited reaching in all directions, including overhead.  She can occasionally climb ramps and stairs, balance, kneel, crawl, crouch, including bending at the knees, and stoop, including bending at the waist. She should never climb ladders, ropes, or scaffolds.  [Plaintiff] has unlimited ability to handle for gross manipulation, finger for fine manipulation, and feel with skin receptors.  She has unlimited visual and communicative abilities and unlimited ability to be exposed to extreme heat, wetness, humidity, noise, fumes, odors, dust, gases, or poor ventilation, but should avoid concentrated exposure to extreme cold, vibration, and hazards such as heavy machinery with rapidly moving parts or unprotected heights.

> [Plaintiff] can remember locations and work-like procedures.  She can understand and remember short and simple instructions.  [Plaintiff] can carry out short and simple instructions and she can maintain the attention and concentration necessary between legally required breaks.  She can perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  [Plaintiff] can sustain an ordinary routine without special supervision.  She would work best in proximity to but not in close cooperation with others.  She can work without exhibiting behavioral extremes and she can make simple work-related decisions.  With legally required breaks, she can complete a normal workday and work week without interruptions from psychologically based symptoms.  [Plaintiff] can perform at a consistent pace without an unreasonable number and length of rest periods.  She would work best in an environment with superficial public contact.  [Plaintiff] can ask simple questions or request assistance, accept

REPORT AND RECOMMENDATION - 7

1

instructions, and respond appropriately to criticism from supervisors. She

2

can get along with co-workers or peers without distracting them or exhibiting behavioral extremes. [Plaintiff] can maintain a socially appropriate behavior and adhere to basic standards of neatness and

3

cleanliness. [Plaintiff] can use public transportation and she would work best in an environment where goals and plans are clearly established, in

4

other words, routine and repetitive.

5

Tr. 29.

6

At step four, the ALJ found Plaintiff was able to perform her past relevant

7

work as a cleaner, housekeeping. Tr. 36. In the alternative, at step five, the ALJ

8

found that considering Plaintiff's age, education, work experience, and RFC, there

9

are other jobs that exist in significant numbers in the national economy that

10

Plaintiff can perform such as fast food worker, cashier II, and cafeteria attendant.

11

Tr. 38. The ALJ concluded Plaintiff has not been under a disability, as defined in

12

the Social Security Act, from December 12, 2012 through the date of the decision.

13

Tr. 39.

14

On October 26, 2017, the Appeals Council denied review, Tr. 1-6, making

15

the ALJ's decision the Commissioner's final decision for purposes of judicial

16

review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

17

**ISSUES**

18

Plaintiff seeks judicial review of the Commissioner's final decision denying

19

her disability insurance benefits under Title II and supplemental security income

20

benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises

the following issues for this Court's review:

    1.  Whether the ALJ properly evaluated the medical opinion evidence;

    2.  Whether the ALJ properly weighed Plaintiff's symptom claims; and

    3.  Whether the ALJ's step five finding is supported by substantial evidence.

*See* ECF No. 14 at 12.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the medical opinions of

Diane Beernink, Advanced Registered Nurse Practitioner (ARNP), Myrna Palasi,

M.D., Frank Rosekrans, Ph.D., and Kayleen Islam-Zwart, Ph.D.  ECF No. 14 at

15-18.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's."  *Id*.  "In addition, the regulations give more weight to

REPORT AND RECOMMENDATION - 9

1  opinions that are explained than to those that are not, and to the opinions of

2  specialists concerning matters relating to their specialty over that of

3  nonspecialists." *Id.* (citations omitted).

4        If a treating or examining physician's opinion is uncontradicted, an ALJ may

5  reject it only by offering "clear and convincing reasons that are supported by

6  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

7  "However, the ALJ need not accept the opinion of any physician, including a

8  treating physician, if that opinion is brief, conclusory and inadequately supported

9  by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

10  Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

11  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

12  may only reject it by providing specific and legitimate reasons that are supported

13  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-

14  31).

15        *1. Diane Beernink, ARNP and Myrna Palasi, M.D.*

16        In May 2014, two medical sources provided physical functional evaluations

17  of Plaintiff for the Washington State Department of Social and Health Services

18  (DSHS).  On May 1, 2014, after initially examining Plaintiff on April 24, 2014,

19  Ms. Beernink opined that Plaintiff was limited to sedentary work due to "mild

20  lumbar degenerative disc disease."  Tr. 502.  She specifically opined Plaintiff had

moderate to marked limitations in standing, walking, lifting, carrying, handling, pushing, pulling, stooping, and crouching.  Tr. 502.  Ms. Beernink recommended physical therapy and possible retraining for a "less physical occupation than housekeeping."  Tr. 503.  One week later, Dr. Palasi likewise opined that Plaintiff's degenerative disc disease limited Plaintiff to sedentary work allowing Plaintiff to "sit for most of the day; walk or stand for brief periods."  Tr. 515.  Dr. Palasi opined Plaintiff had significant non-exertional restrictions and marked limitations in postural restrictions and gross or fine motor skill restrictions.  Tr. 515.  The ALJ assigned both opinions little weight.  Tr. 34.

These opinions were contradicted by the opinions of state agency consultants Leslie Arnold, M.D. Tr. 129-39, 151-54, and Norman Staley, M.D., Tr. 170-72, 188-90, which the ALJ accorded great weight.  Tr. 33.  The ALJ was required to provide specific and legitimate reasons for rejecting Dr. Palasi's opinion.  However, Ms. Beernink does not qualify as an "acceptable medical source" under the regulations as of the date of the ALJ's decision.  *See* 20 C.F.R. §§ 404.1502, 416.902 (defining the term "acceptable medical source").[2]  The

_____

[2] Prior to March 27, 2017, the requirement that an ALJ consider evidence from non-acceptable medical sources was located at 20 C.F.R. §§ 404.1513(d), 416.913(d).

REPORT AND RECOMMENDATION - 11

opinions of a non-acceptable medical source are entitled only to the weight

warranted by the facts of the case, 20 C.F.R. § 404.1527(f)(1),[3] and the ALJ must

give germane reasons for discounting the opinion of Ms. Beernink.[4]  *See Britton v.*

*Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

_____

[3] Although rescinded effective March 27, 2017, at the time of the ALJ's decision

the requirement to address non-acceptable medical sources was reflected in Social

Security Regulation (SSR) 06-03p, 2006 WL 2329939 (Aug. 9, 2006), which

required Social Security to consider "all relevant evidence in the case record,"

including medical sources who were not considered acceptable medical sources.

[4] Plaintiff contends "controlling weight" ought to be given to Ms. Beernink as a

"treating source" pursuant to Social Security Regulation (SSR) 96-2P.  ECF No. 14

at 15; *see also* Tr. 405.  However, Ms. Beernink does not qualify as a "treating

source."  20 C.F.R. § 404.1527(a)(2) (defining "treating source" as the "acceptable

medical source who provides [the claimant], or has provided [the claimant], with

medical treatment or evaluation and who has, or has had, an ongoing treatment

relationship with [the claimant]").  Moreover, the record reflects Ms. Beernink

examined Plaintiff once, and as such, the opinion would not have warranted more

weight due to the length and frequency of the treating relationship.

REPORT AND RECOMMENDATION - 12

1     First, the ALJ noted that these opinions were "rendered for an agency other

2  than the Social Security Administration." Tr. 34. The ALJ explained generally

3  that she is not bound by decisions for DSHS, although they "may provide insight

4  into the individual's impairments and show the degree of disability determined by

5  these agencies based on their rules." Tr. 35. Defendant contends the ALJ properly

6  found these opinions "less probative because they were submitted under the rules

7  of Washington state," however Defendant does not cite any authority. ECF No. 21

8  at 9. The regulations provide that the amount of an acceptable source's knowledge

9  of Social Security disability programs and their evidentiary requirements may be

10  considered in evaluating an opinion, regardless of the source of that understanding.

11  20 C.F.R. §§ 404.1527(c), 416.927(c). Although state agency disability rules may

12  differ from Social Security Administration rules regarding disability, it is not

13  always apparent that the differences in rules affect a particular physician's report

14  without further analysis by the ALJ. Here, the ALJ failed to identify any relevant

15  and specific definitions used in the evaluations that are different from those

16  relevant to the SSA disability determination. Tr. 34-35. Standing alone, the mere

17  fact a medical opinion was rendered for another government agency, is neither a

18  germane nor specific and legitimate reason to reject these opinions.

19     Second, the ALJ found Ms. Beernink and Dr. Palasi's opinions were

20  inconsistent with the medical evidence. Tr. 34. A medical opinion may be

REPORT AND RECOMMENDATION - 13

1  rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v.*

2  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v.*

3  *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144,

4  1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

5  Here, the ALJ observed that Plaintiff's "imaging studies showed degenerative disc

6  disease, but *no significant* abnormalities," and Plaintiff did not "exhibit *any*

7  *significant* abnormalities in her physical examinations."  Tr. 34 (citing Tr. 687-88

8  (Sept. 16, 2015 chart note of primary care physician Janet Deegan, M.D.); Tr. 717

9  (2015 MRI); Tr. 733-39 (Feb. 2, 2016 report of orthopedic specialist Miguel

10  Schmitz, M.D.)).

11      The 2015 MRI cited by the ALJ indicated, in part, as follows:

12      1. L4-5 disc is dehydrated. Diffuse disc bulge with a shallow central disc
        protrusion.  Mild to moderate hypertrophic facet osteoarthrosis and
13      ligamentum flavum hypertrophy.  Mild canal stenosis.  Moderate neural
        foraminal stenosis on the right.
14      2. L5-S1 disc is dehydrated with a diffuse disc bulge.  Mild to moderate
        hypertrophic facet osteoarthrosis.  Mild neural foraminal stenosis on the left.
15      3. L3-4 disc is dehydrated.  Shallow right paracentral to foraminal
        protrusion, contacts the right L4 nerve root.  Mild neural foraminal stenosis
16      on the right.

17  Tr. 718.  Plaintiff's treating physician, Dr. Deegan, noted the MRI showed a disc

18  protrusion contacting her L4 nerve root, prescribed Ultram, and referred Plaintiff

19  for another orthopedic evaluation with specialist, Dr. Schmitz.  Tr. 744-45, 640

20  (noting delay in referral to Dr. Schmitz due to Plaintiff's comments about Dr.

REPORT AND RECOMMENDATION - 14

Schmitz and suicidal ideation).  Dr. Schmitz had treated Plaintiff previously in

2010, when he described Plaintiff's overall condition associated with her chronic

low back pain as "very challenging" because the MRI and discogram did not

clarify whether the "pain generator is L4-5 or L5-S1."  Tr. 473.  At that time, Dr.

Schmitz assessed the failure "of conservative management" (including epidural

steroid injections, prescription medications, and physical therapy) and offered an

operative intervention, which Plaintiff declined.  Tr. 473, 466.

On February 2, 2016, Dr. Schmitz examined Plaintiff again for "ongoing

low back pain with pain going into the left lateral hip area."  Tr. 734-39.  On

examination, Dr. Schmitz noted Plaintiff exhibited a restricted lumbar range of

motion and pain with lumbar flexion and extension.  *Id.*  He diagnosed spondylosis

of the lumbar region without myelopathy or radiculopathy, bursitis of the left hip,

and morbid obesity.  Tr. 738.  Dr. Schmitz concluded surgical intervention was

not necessary, he performed a left hip injection explaining that it "may or may not

help with her low back," and recommended physical therapy and weight loss.  Tr.

739.

The ALJ dismissed the cited evidence of multi-level disc bulges and

protrusion and range of motion limitation as exhibiting "no significant

abnormalities," without further explanation as why the evidence did not qualify as

"significant" and how it was inconsistent with the sedentary limitations opined by

REPORT AND RECOMMENDATION - 15

Dr. Palasi and Ms. Beernink.  Notably, the state agency opinions, upon which the

ALJ relied in forming the RFC, were rendered prior to the 2015 imaging and 2016

examination of Dr. Schmitz cited by the ALJ.  Further, medical expert Christopher

Alexander, III, M.D., specifically testified that taking into consideration the 2016

findings of Dr. Schmitz: "I would not restrict her sitting, but I would restrict her

standing and walking to four out of eight hours with normal breaks."  Tr. 56.  The

ALJ also accorded this portion of Dr. Alexander's opinion "little weight," citing

the same evidence of lack of "significant abnormalities."  Tr. 34.  This raises

serious doubts as to whether the ALJ properly considered the medical opinions

regarding Plaintiff's physical limitations.  *See Rohan v. Chater*, 98 F.3d 966, 970

(7th Cir. 1996) (ALJ "must not succumb to the temptation to play doctor and make

[his or her] own independent medical findings").  Under these circumstances, the

ALJ's conclusory reasoning regarding the medical evidence is not a germane or

specific and legitimate reason, supported by substantial evidence, to reject the

opinions of Ms. Beernink or Dr. Palasi.

REPORT AND RECOMMENDATION - 16

1    *2. Frank Rosekrans, Ph.D.*

2    Examining psychologist Frank Rosekrans evaluated Plaintiff a second time[5]

3    on November 19, 2013 and diagnosed major depressive disorder and generalized

4    anxiety disorder.  Tr. 491-98.  He opined Plaintiff had marked limitations in the

5    ability to: (i) perform activities within a schedule, maintain regular attendance, and

6    be punctual within customary tolerances without special supervision; (ii)

7    communicate and perform effectively in a work setting; (iii) complete a normal

8    work day and work week without interruptions from psychologically based

9    symptoms; and (iv) maintain appropriate behavior in a work setting.  Tr. 493.  He

10   also assessed several other areas with moderate limitations.  *Id*.  The ALJ assigned

11   little weight to this portion of the opinion.  Tr. 34.  Because Dr. Rosekrans' opinion

12   was contradicted by state agency consultants, Eugene Kester, M.D., Tr. 130-40,

13   154-55, and Thomas Clifford, Ph.D., Tr. 172-74, 190-92,[6] the ALJ was required to

-----

15   [5] Dr. Rosekrans previously evaluated Plaintiff on January 10, 2012, Tr. 803-06,

16   and his findings were considered in the prior ALJ's decision.  Tr. 104.

17   [6] Psychologist Ellen Rozenfeld, Ph.D. testified as a medical expert.  Tr. 49-52.  The

18   ALJ did not rely upon Dr. Rozenfeld's testimony to reject the medical opinion

19   evidence.  Tr. 29 (relying upon Dr. Rozenfeld to conclude Plaintiff did not meet a

20   listing).

1  provide specific and legitimate reasons for rejecting Dr. Rosekrans' opinion.

2  *Bayliss*, 427 F.3d at 1216.

3        As Plaintiff contends, the ALJ assigns little weight to the opinion of Dr.

4  Rosekrans without explanation.  The ALJ may not rest on her conclusion alone.

5  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (the ALJ "must do more

6  than offer his conclusion."); *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir.

7  2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight

8  while doing nothing more than ignoring it, asserting without explanation that

9  another medical opinion is more persuasive, or criticizing it with boilerplate

10 language that fails to offer a substantive basis for his conclusion.").  Defendant

11 contends that the ALJ discounted his opinion "because she found them inconsistent

12 with the medical evidence."  ECF No. 21 at 10-11.  Here, the ALJ cited the

13 consistency with the medical evidence as a reason for crediting Dr. Rosekrans'

14 assessment of no or mild limitations in six separate areas.  Tr. 34.  On this record,

15 the Court will not infer the ALJ found inconsistencies with the medical evidence in

16 regard to the separate moderate and marked limitations where the ALJ's decision

17 does not provide this explanation or identify any specific inconsistencies.

18       The ALJ failed to give specific and legitimate reasons for rejecting Dr.

19 Rosekrans' moderate to marked limitations.

20

REPORT AND RECOMMENDATION - 18

*3. Kayleen Islam-Zwart, Ph.D.*

In March 2016, Dr. Islam-Zwart examined Plaintiff and administered a number of psychological tests to determine the extent of Plaintiff's psychological limitations.  Tr. 799-801.  She found Plaintiff's mental health symptoms included flat affect, confusion/slowed processing, social withdrawal, communication difficulty, cognitive impairment, and intellectual deficit.  Tr. 795.  She diagnosed borderline intellectual functioning, mild neurocognitive impairment (provisional), and unspecified personality disorder.  Tr. 795.  Dr. Islam-Zwart opined Plaintiff had severe limitations in the ability (i) to understand, remember, and persist in tasks by following detailed instructions, (ii) learn new tasks, and (iii) communicate and perform effectively in a work setting; and had marked limitations in her ability to (i) perform activities within a schedule within customary tolerances and without special supervision, (ii) adapt to changes in a routine work setting, (iii) ask simple questions or request assistance, (iv) maintain appropriate behavior in a work setting, (v) complete a normal work day and work week without interruptions from psychologically based symptoms, and (vi) set realistic goals and plan independently.  Tr. 796.  Dr. Islam-Zwart opined that Plaintiff "is unable to work at this time and her prognosis for the future seems poor."  Tr. 802.

The ALJ gave this opinion little weight.  Tr. 35.  Because Dr. Islam-Zwart's opinion was contradicted by state agency consultants, Eugene Kester, M.D., Tr.

REPORT AND RECOMMENDATION - 19

1   130-40, 154-55, and Thomas Clifford, Ph.D., Tr. 172-74, 190-92, the ALJ was

2   required to provide specific and legitimate reasons for rejecting the opinion.

3   *Bayliss*, 427 F.3d at 1216.

4       At the outset, the ALJ's decision did not acknowledge the severe limitations

5   opined by Dr. Islam-Zwart.  Tr. 35 (noting only moderate to marked limitations).

6   The ALJ found Dr. Islam-Zwart's opinion was not consistent with the "totality of

7   the medical and non-medical evidence."  Tr. 35.  An ALJ may discredit

8   physicians' opinions that are unsupported by the record as a whole.  *Batson v.*

9   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  As examples,

10  the ALJ noted the mental status examination showed Plaintiff was "orientated[sic],

11  she had good eye contact, and she was able to respond to interview questions."  Tr.

12  35 (citing 799-800).  Additionally, the ALJ found: "her treating providers noted

13  consistently that [Plaintiff] was stable with her medication and reported although

14  the [Plaintiff] had partial insight and fair judgment, she was orientated[sic],

15  cooperative, and she had continuous eye contact, normal speech and thought

16  content."  Tr. 35.

17      Plaintiff contends the evidence cited by the ALJ does not explain any

18  conflict with Dr. Islam-Zwart's opinion in any meaningful way.  ECF No. 14 at 18.

19  The undersigned agrees.  That Plaintiff was oriented, maintained eye contact, and

20  could respond to questioning, was not particularly relevant to Dr. Islam-Zwart's

REPORT AND RECOMMENDATION - 20

1  opinion assessing severe and marked limitations in nine basic work activities,

2  findings which were based upon psychological testing and explained in narrative

3  form.  Furthermore, while the record supports the ALJ's finding that Plaintiff's

4  mental health was reported "stable" while on medication (including Geodon,

5  Paroxetine, citalopram, lorazepam), it was not always symptom-free.  Tr. 545 (July

6  8, 2014); Tr. 553 (April 2014); Tr. 572 (Jan. 14, 2014); Tr. 579 (Oct. 15, 2013); Tr.

7  586 (July 15, 2013); Tr. 593 (Apr. 18, 2013); Tr. 600 (Jan. 15, 2013); Tr. 606 (Oct.

8  1, 2014: "stable, but symptomatic"); Tr. 612 (Aug. 18, 2014);Tr. 760 (Jan. 4, 2016)

9  ("stable, but symptomatic"); Tr. 781 (Mar. 24, 2015: "[Plaintiff] needs continuing

10  medication management to remain at her current level.").  *See Petty v. Astrue*, 550

11  F.Supp.2d 1089, 1099 (D. Ariz. 2008) ("The Court initially notes that a condition

12  can be stable but disabling").  Given a remand is warranted to revisit other medical

13  source opinions, the ALJ should reevaluate and clarify the explanation of the

14  weight accorded to Dr. Islam-Zwart's entire opinion.

15  **B. Plaintiff's Symptom Claims**

16  Plaintiff faults the ALJ for "discredit[ing]" Plaintiff's symptom claims.  ECF

17  No. 14 at 12-13.  The evaluation of Plaintiff's symptom claims and their resulting

18  limitations relies, in part, on the assessment of the medical evidence.  *See* 20

19  C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016 WL 5180304 (Oct. 25, 2017).

20  The ALJ's review of Plaintiff's symptom claims mistakenly states that Plaintiff's

physical impairments were addressed in the RFC "with the light exertional level," Tr. 36, though the RFC was for a limited range "medium work."  Tr. 29.  The mistake – which touches upon an outcome determinative issue in the case – creates additional uncertainty as to whether substantial evidence exists to support the ALJ's determination that Plaintiff has the ability to perform medium work, rather than light work.  Defendant also concedes the ALJ erred in determining Plaintiff was capable of the two other medium exertion level jobs other than her past relevant work.  ECF No. 21 at 15.

Having recommended this matter should be reversed and remanded for further proceedings to readdress the medical source opinions, the ALJ should be instructed to also carefully reevaluate Plaintiff's symptom claims in the context of the entire record.

**C. Steps Four and Five**

Plaintiff contends Grid Rule 202.04 establish Plaintiff's disability given that she turned age 55 during the application period and Dr. Alexander's standing limitation would result in a limitation to light, unskilled work.  As a remand is necessary to address steps preceding step five, it would be premature to address Plaintiff's argument.  Upon remand, the ALJ must first reevaluate the RFC and step four.

1    **D. Remedy**

2        Plaintiff urges this Court to remand for an immediate award of benefits

3    under the credit-as-true doctrine.  ECF No. 14 at 19.

4        "The decision whether to remand a case for additional evidence, or simply to

5    award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d

6    1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

7    When the Court reverses an ALJ's decision for error, the Court "ordinarily must

8    remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041,

9    1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

10   proper course, except in rare circumstances, is to remand to the agency for

11   additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

12   775 F.3d 1090, 1099 (9th Cir. 2014).  The Court may not award benefits under the

13   credit-as-true rule unless the record has been fully developed, further

14   administrative proceedings would serve no useful purpose, and there is no "serious

15   doubt" that the Plaintiff is, in fact disabled.  *Revels v. Berryhill*, 874 F.3d 648, 668

16   (9th Cir. 2017); *Garrison*, 759 F.3d at 1021.  As these requirements are not

17   satisfied, the Court recommends a remand for further administrative proceedings.

18   *See Treichler*, 775 F.3d at 1101 ("Where there is conflicting evidence, and not all

19   essential factual issues have been resolved, a remand for an award of benefits is

20   inappropriate.").

REPORT AND RECOMMENDATION - 23

On remand, the ALJ shall: (i) offer the Plaintiff the opportunity for a further administrative hearing and further develop the record as necessary; (ii) reweigh the medical opinions; (iii) reweigh Plaintiff's symptom claims; and (iv) revisit the five-step inquiry, starting with step three.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, ECF No.14, be **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 21, be **DENIED**.

3. The Court enter JUDGMENT in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection

REPORT AND RECOMMENDATION - 24

shall be filed within **fourteen (14)** days after receipt of the objection. Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED November 20, 2018.

s/Mary K. Dimke
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 25